213 P.2d 690

**In re LEWKOWITZ et al.**

**No. 5235.**

Supreme Court of Arizona.

Decided Jan. 16, 1950.

Alfred C. Lockwood, of Phoenix, for State Bar of Arizona.

Fred C. Struckmeyer, of Phoenix, Louis B. Whitney, of Phoenix, for respondent, Herman Lewkowitz.

Mark Wilmer, of Phoenix, for respondent, Raymond R. Wein, Fred A. Ironside, Jr., of Phoenix, of counsel.

PHELPS, Justice.

The questions of law here involved are presented to us in support of motions to vacate, quash and dismiss an order to show cause directed against respondents, issued out of this court in the above entitled cause.

In view of the importance of the matter presented we deem it advisable to depart from our usual practice and to record our views in a written decision.

The first claim of respondents is that in so far as the provisions of the State Bar Act deal with rules of professional conduct, disbarment and discipline, breach of rules, local administrative committees, and proceedings and procedure of disbarment, such provisions are violative of article 4, part 2, section 13 of the Arizona constitution and are therefore void.

Article 4, part 2, section 13, of our constitution provides: "Every act . shall embrace but one subject and matters properly connected therewith, which subject shall be expressed in the title; but if any subject shall be embraced in an act which will not be expressed in the title, such act shall be void only as to so much thereof as shall not be embraced in the title."

The title to the Arizona State Bar Act, A.C.A.1939, § 32-301 et seq., here under consideration reads as follows: "An act relating to the state bar, and creating a public corporation to be known as 'The State Bar of Arizona.' Laws of 1933, ch. 66, [p. 251]."

Query: Considering the portions of the act to which the assignment is directed, is the title thereof sufficient to meet the requirements of the above provisions of the constitution?

In arriving at an answer to the question, we will assume as a premise well-established rules of statutory construction to which this court is definitely committed:

1. That the court must give full weight to the law making power of the legislative branch of government and that no court should declare legislation invalid if there can be found a legal basis for its validity. Hernandez v. Frohmiller, 68 Ariz. 242, 204 P.2d 854. The rule that every intendment must be indulged by the courts in favor of the validity of a statute is applicable to statutes claimed to be unconstitutional as in violation of the constitutional provision requiring but one subject and matters properly connected therewith, to be stated in the title. 50 Am.Jur., Statutes, section 170.

2. Constitutional provisions requiring the subject of legislative acts to be embraced in the title will not be given a strained and narrow construction for the purpose of nullifying legislation but must be liberally construed. Hancock v. State, 31 Ariz. 389, 254 P. 225; Van Dyke v. Geary, 244 U.S. 39, 37 S.Ct. 483, 61 L.Ed. 973.

3. That any provision of the act directly or indirectly relating to the subject expressed in the title and having a natural connection therewith, and not foreign thereto, should be held to be embraced in it. Hancock v. State, supra; State v. Pelosi, 68 Ariz. 51, 199 P.2d 125.

4. Article 4, part 2, section 13 of the constitution, supra, does not require that

the title be an index to the contents of the act but is satisfied if it states the subject in general terms without disclosing the details of the legislation. In re Miller, 29 Ariz. 582, 244 P. 376.

5. That this court, following the almost universal rule will not declare an act of the legislature unconstitutional unless satisfied thereof beyond a reasonable doubt. State v. Davey, 27 Ariz. 254, 232 P. 884; Black & White Taxicab Co. v. Standard Oil Co. et al., 25 Ariz. 381, 218 P. 139.

6. The title of the act however should be sufficiently full and comprehensive as to indicate, in a general way at least, what is to follow in the way of legislation. It should not be so meager as to mislead or attempt to avert inquiry into the contents thereof. Board of Control v. Buckstegge, 18 Ariz. 277, 158 P. 837.

7. A title must fairly set forth the subject of legislation with sufficient clearness to give notice of the legislative intent and purpose to those interested therein or affected by the terms of the act without the aid of any suggestions or inferences which may be drawn from knowledge de hors the language used. 59 C.J., Statutes, section 387.

8. The purpose of constitutional provisions such as ours, adopted in most states of the Union, is to prevent surprise and the evils of omnibus bills and surreptitious and hodge-podge legislation that were frequent in legislation prior to their adoption. Board of Control v. Buckstegge, supra. The question of the sufficiency of title: " * * * is not one of intent on the part of the lawmakers in phrasing the title, but of its significance and meaning to those who might read it at that stage of its history when it was only a bill going through the process of its enactment into law." Wilmington Trust Co. v. Highfield, 4 W.W.Harr. 394, 34 Del. 394, 153 A. 864, 867.

With this premise in mind let us consider whether the title of the State Bar Act is sufficient to have given notice to any person interested therein or affected thereby, during the process of its enactment, that the bill would provide an entirely new procedure for the disciplining, suspension and disbarment of members of the State Bar of Arizona, hereinafter called the Arizona State Bar, based upon such rules and regulations as might be adopted by the board of governors (created by said act), not inconsistent with law; that the board would be granted powers in said act to provide additional grounds for suspension, disbarment or discipline of its members than those theretofore existing under the provisions of law. Is the title sufficient to apprise interested persons reading it that the act contains a provision giving to the board of governors power to appoint administrative committees, vesting said administrative committees and the board of governors with concurrent powers

to initiate and conduct investigations, with or without complaint, of all matters relating to the Arizona State Bar, or its affairs, or the practice of law, or the discipline of the members of the Arizona State Bar or any other matter within the jurisdiction of the Arizona State Bar? Does the title indicate in any way that the administrative committee or the board of governors is to be vested with power to take and hear evidence touching matters under investigation, administer oaths, to compel the attendance of witnesses and production of books, papers and documents pertaining to such matters? Or to give said administrative committees and board of governors summary recourse to the superior courts of the state, to punish as for contempt any person for failure to appear in answer to a subpoena issued by either the board or committee and upon appearance for his failure to conform with the orders and requirements of said board or committee?

It is argued by the Arizona State Bar that the language, "an act relating to the state bar" is synonymous with "an act relating to attorneys at law" and cites In re Miller, supra, in support of its claim that the title in the instant case meets the constitutional requirements. Frankly we find no comfort in that case in support of the position of the Arizona State Bar. It is admitted in its argument that the clause "and creating a public corporation to be known as the 'State Bar of Arizona'" is a limitation upon the first part of the title. With this proposition we agree. This being true, it irresistibly follows that the scope of legislation in the body of the act is likewise limited to the same extent as the title, thus limiting the scope of the proposed legislation primarily to the incorporation of the State Bar of Arizona. With this in mind, let us examine the Miller case.

The title to the litigation involved in that case reads as follows: "An act to amend paragraph 263, chapter 1, title 3, Revised Statutes of Arizona, 1913 Civil Code, as amended by chapter 43, Session Laws of Arizona, 1919, entitled 'Attorneys at Law'; and repealing paragraph 262 of the Revised Statutes of the state of Arizona, 1913 Civil Code, and all acts and parts of acts in conflict herewith." Laws 1925, c. 56.

While the court said that the title "attorneys at law" advises any one who reads it: " * * * that the act deals with the general subject 'attorneys at law,' and when this term as a subject of legislation is spoken of those aspects of the question legislative bodies ordinarily concern themselves with, namely, the admission and disbarment of attorneys, naturally come to mind. * * *" [29 Ariz. 582, 244 P. 378]

But the court points out that paragraph 263, chapter 1, title 3, supra, was originally enacted as section 2, chapter 76, Laws of 1907, Territory of Arizona, under the title:

"An act to regulate admission to the practice of law" and that it was re-enacted as section 2 of chapter 24 of the Acts of the First State Legislature, 3rd Special Session, under the title: "An act to regulate the admission to practice of attorneys at law and the disbarment of attorneys and defining the rights, duties and privileges of attorneys at law." and carried forward into the Civil Code of 1913 as paragraph 263 where it appears in title 3 thereof which is devoted solely to "attorneys at law."

The court then cites authorities sustaining the proposition that a title which simply names or describes an amended act as such without stating the special character or substance of the amendment is sufficient and that [29 Ariz. 582, 244 P. 379]: "The matters treated in the amending act, however, must be germane to the subject expressed in the title of the original act and such that they could have been properly included in that legislation."

Thus it will be seen that the court had before it in that case for consideration not only the title of chapter 56, Session Laws of 1925 but it had before it the title to chapter 76, section 2, Laws of 1907, Territory of Arizona and the title to chapter 24, section 2, Acts of the First State Legislature, third special session, which when considered together under well-settled rules of construction fully met the requirements of article 4, part 2, section 13, Arizona constitution, supra.

While it is true that membership of the Arizona State Bar consists exclusively of attorneys at law, it does not follow either directly or by necessary inference that the title in the Arizona State Bar Act either with or without the limitation, pointed out above, was sufficiently comprehensive to give notice to any one interested or affected thereby of the contents of the act. It does not give notice that a new and different procedure was being adopted designed to provide for the discipline, suspension and disbarment of lawyers upon such grounds and for such reasons as the board of governors might provide by rules and regulations not inconsistent with the existing laws, and by rules of professional conduct formulated by said board.

The provisions of the act purport to give the board of governors authority to adopt rules and regulations not inconsistent with law necessary and expedient for carrying out the act and especially to formulate and enforce rules of professional conduct for members of the bar in the state. No restriction whatever is placed upon the board in its power to formulate and enforce rules of professional conduct for members of the bar in the state.

We do not believe that any one reading the title of the State Bar Act could logically infer that there would be incorporated in the act a provision relating to disbarment of attorneys such as that referred to above, especially in view of the fact that the legislature had already provided a method

of procedure for the discipline, suspension and disbarment of attorneys at law in Arizona.

If the legislation had been entitled, "An Act Relating to the Medical Association and Creating a Public Corporation to be Known as the State Medical Association of Arizona" could it be said that any one reading such title would be charged with notice that there was incorporated in the act provisions for the regulation of the practice of medicine in the state of Arizona and for the cancelling of the licenses of physicians then engaged in the practice, upon grounds to be determined by some board created by the act? We think the answer is in the negative.

The supreme court of the state of Idaho had before it in 1924 in the case of Jackson v. Gallet, 39 Idaho 382, 228 P. 1068, 1070, an act relating to the state bar which had for its title the following language: "Protecting the public against the improper, unethical and unauthorized practice of the law profession, and to relieve the state from the cost of holding examinations for admission to the bar, and providing for the necessary and proper organization and discipline of attorneys at law; regulating the practice of law and providing for the organization and government of the Idaho state bar including the fixing of license fees and examination of applicants to the bar and discipline of members thereof, and repealing all acts inconsistent herewith." Laws 1923, c. 211.

As a part of the act it created a commission of three members in order to effectively carry out the purposes and intent of the act. Section 8 thereof provides: "The board of commissioners shall have power to determine, by rules, the qualifications and requirements for admission to the practice of the law and to conduct examination of applicants, and they shall from time to time certify to the supreme court names of those applicants found to be qualified. The approval of the persons whose names are so certified, by the supreme court, shall entitle them to be enrolled in the bar of the state, and to practice law. The board shall formulate rules governing the conduct of all persons admitted to practice and shall investigate and pass upon all complaints that may be made concerning the professional conduct of any person admitted to the practice of the law. In all cases in which the evidence, in the opinion of a majority of the board, justifies such a course, they shall take such disciplinary action by public or private reprimand, suspension from the practice of the law, or exclusion and disbarment therefrom, as the case shall in their judgment warrant. Upon the making of any order by the board suspending or disbarring any member of the Idaho state bar from the practice of law, the board shall cause a certified copy thereof to be immediately filed with the clerk of the supreme court. The supreme court may in any case of suspension or disbarment from practice review the action of the board, and may on its own motion,

and without the certification of any record, inquire into the merits of the case and take any action agreeable to its judgment. The board of commissioners shall also have power to make rules and by-laws not in conflict with any of the terms of this act concerning the selection and tenure of its officers and committees and their powers and duties, and generally for the control and regulation of the business of the board and of the Idaho state bar."

The court in passing upon the constitutionality of this act under a constitutional provision relating to title which is identical with our own said: "In connection with the sufficiency of the title, it is to be observed that the act creates a board of commissioners of the Idaho State Bar, which board by the act creating it, is given powers extraordinary over the members of the Idaho State Bar. The creation of the board and the grant of powers in effect, and we think it is so intended, confer upon the Idaho State Bar self-government. The real purpose of the act is most certainly 'outside of the ordinary and usual scope of legislation,' especially if, as contended by counsel for plaintiff, an administrative arm of the state is all that is intended to be created, and being and because 'outside the ordinary and usual scope of legislation,' the title should afford a suggestion of the enactment or true purpose which it conceals. * * * The practical regulation of the practice of law and the admission of attorneys to practice has been intrusted to the courts of this state from territorial days, and in view of the language used in the title may anyone reasonably be justified in assuming that this long-continued practice is to be discarded and in its stead the radical departures proposed by the act substituted? One may safely concede that a subject of an act includes by reasonable inference all those things which will or may facilitate the accomplishment thereof * * *."

The court then quotes from Diana Shooting Club v. Lamoreaux, 114 Wis. 44, 89 N.W. 880, 91 Am.St.Rep. 989, the following: "When one, reading a bill with the full scope of the title thereof in mind, comes upon provisions which he could not reasonably have anticipated because of their being in no way suggested by the title in any reasonable view of it, they are not constitutionally covered thereby."
and from Sutherland on Statutory Construction, (2d Ed.) volume 1, section 123, page 28, the court quotes the following: "A title so general as practically to conceal the subject of the statute, or a false or delusive title, will be treated as not constitutionally framed."

It will be observed that the title in the Idaho case was far more comprehensive than the one in the instant case and the Idaho court declared the act to be unconstitutional.

We do not wish to be understood as holding that the Arizona State Bar, incorporated or unincorporated, may not

adopt rules of professional conduct relating to the practice of law in Arizona. It certainly has such power and when approved and adopted by the supreme court may furnish a basis for this court, in the exercise of its inherent powers, to discipline, suspend or disbar any attorney engaged in the practice of the law who violates such standards.

We do hold, however, that the title under which the State Bar Act was enacted is too restricted to authorize the broad powers granted to the Arizona State Bar under the provisions of the act relating to the discipline, suspension and disbarment of attorneys.

■ We also expressly hold, contrary to the contention of the Arizona State Bar and contrary to the holding of this court in former disbarment proceedings, that when such proceedings are instituted under the provisions of particular statutes such statutes must be followed to the ultimate conclusion of the prosecution. Any other course would deny the accused procedural due process. The very purpose of the rule of liberal construction of procedural statutes is to enable parties litigant to pursue their remedy thereunder to final judgment unhampered by technicalities. But this does not mean that the court, during the course of the proceedings, may invoke its inherent powers either in aid of the statute or in the exercise of an independent jurisdiction in order to render judgment.

■ We recognize and fully appreciate the outstanding achievements of the incorporated Arizona State Bar in this state and regret that we are forced to declare that portion of the act relating to disbarment proceedings unconstitutional on the ground that said matter is not germane to the subject of the title or directly or indirectly related thereto and has no natural connection therewith but on the other hand is foreign thereto. We therefore hold that sections 32-329, 32-335, 32-337, 32-338, 32-339 and 32-340 are unconstitutional and void.

In view of the decision reached a discussion of the other points raised in support of the motion becomes unnecessary.

Until the State Bar Act can be amended to conform with constitutional provisions the Arizona State Bar has full recourse in matters of this nature through the provisions of sections 32-201 to 32-208 inclusive, relating to disbarment of attorneys, and in view of the gravity of the charge made against respondents, justice to all parties concerned requires that new proceedings be immediately instituted under the provisions of law above mentioned.

It is ordered that respondents' motions to quash and dismiss be granted.

LA PRADE, C. J., and UDALL, STANFORD and DE CONCINI, JJ., concur.